705 So.2d 1021 (1998)
Wordsworth IRVING, Appellant,
v.
STATE of Florida, Appellee.
Nos. 96-2972, 97-44.
District Court of Appeal of Florida, First District.
February 6, 1998.
*1022 Nancy A. Daniels, Public Defender, and Jamie Spivey, Assistant Public Defender, Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General, and Carolyn A. Mosley, Assistant Attorney General, Tallahassee, for Appellee.
MICKLE, Judge.
Appellant challenges his conviction and sentence for one count of sexual battery on a child under twelve years of age and one count of lewd assault on a child. Based on the authority of Hadden v. State, 690 So.2d 573 (Fla.1997), we reverse and remand for a new trial.
Appellant filed a motion in limine to suppress any expert testimony that the victim's behavior was consistent with that of a child who had been sexually abused, and requested that the expert testimony be Frye tested.[1] The motion was denied, and no Frye test was conducted. Dr. James Hord, a clinical psychologist, testified at trial that the victim exhibited symptoms that are consistent with a child who has been sexually abused. We conclude that the admission of Dr. Hord's testimony was reversible error because it was not pure opinion testimony, was not subjected to the Frye test, and would not pass Frye testing according to Hadden.
Dr. Hord was asked and answered:
Q: [B]ased upon your experience and observation, your personal experience and personal observation in these kind of cases, and only on those things, does this child exhibit symptoms that are consistent with a child who has been sexually abused?
A: Yes, she does.
The Florida Supreme Court in Hadden held that an expert's pure opinion testimony which is based solely on the expert's training and experience is not subject to the Frye test for admissibility of novel scientific evidence. Id. at 579-80. Hadden then requires an examination of whether the testimony was pure opinion testimony or scientific-expert testimony. The expert in Hadden testified based upon his experience and training in child sex-abuse cases that the child had been sexually abused. However, the Hadden court reviewed all of the expert testimony and found that "the expert's answer was based not only upon the expert's experiences but on syndromes such as posttraumatic stress disorder and related diagnostic criteria," Id. at 581 (emph.added). Because the expert's opinion was based upon diagnostic standards, it had to pass the Frye test. Id.
Dr. Hord used two projective tests that he testified were "generally viewed as being valid when conducted by an experienced psychologist." However, these are precisely the types of "diagnostic standards" that the Supreme Court held must pass the Frye test. *1023 Id. at 580-81. While Dr. Hord was careful to testify that his opinion was based solely upon his experience and training in child sex-abuse cases, as did the expert in Hadden, the Hadden court was clear that the reviewing court must look at the expert's entire testimony to determine whether that testimony was indeed pure opinion. Id. Dr. Hord's opinion was based upon diagnostic standards, which must pass the Frye test. Id.
Hadden further held that any "expert testimony offered to prove the alleged victim of sexual abuse exhibits symptoms consistent with one who has been sexually abused should not be admitted." Id. at 577. The court added:
[A]t the present time, a psychologist's opinion that a child exhibits symptoms consistent with what has come to be known as "child sexual abuse accommodation syndrome" (CSAAS) [footnote omitted] has not been proven by a preponderance of scientific evidence to be generally accepted by a majority of experts in psychology. Therefore, such opinions (which we will refer to as "syndrome testimony") may not be used in a criminal prosecution for child abuse.
Id. at 575. Even though Dr. Hord never used the magic words "syndrome" or "profile," his testimony may have been based upon CSAAS evidence, which was specifically found to be inadmissible in Hadden. However, even if his opinion was not based on syndrome evidence, it is still not excused from Frye testing, because it was (1) expert testimony, and (2) offered to prove the alleged victim of sexual abuse exhibits symptoms consistent with those of one who has been sexually abused.
The only question that remains is whether this finding of error requires reversal. The reviewing court must look at the context of the entire case and determine whether there is a reasonable probability that the error affected the verdict. State v. DiGuilio, 491 So.2d 1129 (Fla.1986). The evidence in this case consisted of a "swearing match" between Appellant and the victim, which was also the case in Hadden. Hadden v. State, 670 So.2d 77, 91-92 (Fla. 1st DCA 1996) (Ervin, J., dissenting). There was no medical evidence substantiating the abuse. The only direct evidence connecting Appellant to the crimes was the victim's testimony and the Appellant's "failed" lie-detector test. In Hadden, the only evidence was the victim's testimony and the defendant's actual confession. Hadden, 670 So.2d at 92 (Ervin, J., dissenting). The Supreme Court adopted Judge Ervin's dissenting opinion that the admission of the expert's opinion was not harmless. Hadden, 690 So.2d at 581. Accordingly, we hold that the admission of Dr. Hord's testimony was harmful error, and remand for a new trial.
REVERSED and REMANDED for a new trial.
WEBSTER, J., concurs.
LAWRENCE, J., dissents with written opinion.
LAWRENCE, Judge, dissenting.
I respectfully dissent. The majority, in relying upon Hadden v. State, 690 So.2d 573 (Fla.1997), has transgressed the cautionary note in that case:
Nor should our decision here be read so broadly as to require Frye tests for psychological testimony which is not new or novel such as that pertaining to competency or intelligence quotient.
Id. at 580 n. 5 (emphasis added).
Dr. Hord testified that, to help him evaluate responses from the ten-year-old child victim, he used interview tests known as the kinetic family drawing test and projective story-telling cards. He explained these tests:
The kinetic family drawing test is very simple. The instructions are simply you ask the child to draw me a picture of their family, of them and their family, with everyone doing something and to not draw stick figures. And that's all.
The logic of that is the child tends to project, that's why we call them projective tests, project concepts of themselves or their attitudes or their concepts of the people involved into various dimensions of the drawing which can be extremely helpful with children.

*1024 It's also a very accurate test with adults. But, it is a test that I will probably use ninety-five to ninety-eight percent with all children that I see, and I occasionally use with adults.
....
On the projective storytelling card series, it's a series of pictures that are hand-drawn pictures of various family members in various activities with each other. And it's a test that consists of many cards, not all of which are administered to any one person. And the instructions of the test are simply to look at the picture and tell me what is happening or to tell me what's going to happen next or to tell me a story about the picture.
So, the picture becomes a stimulus. Everything that is produced after that is produced by the child. So, again, we get projections of concepts that are important to the child into the influence of the test structure itself.
While tests of competency or intelligence quotient, cited as examples in Hadden, were not the tests used by Dr. Hord, neither is Dr. Hord's testimony based upon "syndrome testimony," which is the focal point in Hadden. Furthermore, Dr. Hord's testimony is undisputed that the projective tests used here are "generally viewed as being valid when conducted by an experienced psychologist."[2] Dr. Hord undisputedly is an experienced psychologist.
The only tests Hadden requires to be Frye-tested are "new or novel" ones. Id. The instant record is devoid of any evidence that the tests at issue here are new or novel. Any party objecting to the admissibility of evidence on the ground that it is new or novel scientific evidence at least should have to make a preliminary showing that such is the case. Otherwise, the judicial process is thwarted. The projective tests Dr. Hord uses neither directly nor indirectly relate to "syndrome" testimonythe evil Hadden seeks to avoid. Indeed, Dr. Hord uses the kinetic family drawing test in over ninety-five per cent of the child interviews in his practice, regardless of the nature of the problem involved!
Rather than reversing for a new trial, I would employ the remedy used by the Supreme Court in Brim v. State, 695 So.2d 268 (Fla.1997), and remand the instant case to the trial court for a limited evidentiary hearing on whether the projective tests used by Dr. Hord are new or novel, such as to require Frye-testing. I suspect such an evidentiary hearing would show that the kinetic family drawing test and projective story-telling cards used in this case have been around for a long time; a new trial thus would not be warranted.
NOTES
[1] Frye v. United States, 293 F. 1013 (D.C.Cir. 1923) (outlining the standard for admissibility of novel scientific evidence).
[2] Dr. Hord testified in response to the State's question:

Q: Are they [tests] generally accepted as valid?
A: Both of these tests are projective tests. Issues of validity in measurable form are very difficult to apply to projective tests. However, the results of a competent evaluation using projective tests are generally viewed as valid when conducted by an experienced psychologist.