787 So.2d 229 (2001)
Johnny BROWN, Appellant,
v.
STATE of Florida, Appellee.
No. 2D00-199.
District Court of Appeal of Florida, Second District.
May 18, 2001.
*230 James Marion Moorman, Public Defender, and Richard T. McKendrick, Assistant Public Defender, Bartow, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and John M. Klawikofsky, Assistant Attorney General, Tampa, for Appellee.
PARKER, Acting Chief Judge.
Johnny Brown appeals his conviction and sentence for opposing a law enforcement officer with violence. Brown raises three issues on appeal, only one of which has merit. On that issue, we agree with Brown that his conviction and sentence must be reversed because of the improper closing arguments of the prosecutor.[1]
While driving in Tampa, Brown rear ended another vehicle. The two drivers stopped, examined their vehicles, and determined the damage was inconsequential. As they started to leave the scene, two Tampa police officers, who had apparently witnessed the accident, approached the two drivers. After a discussion with Brown, one officer decided to arrest him for DUI. The trial testimony of the officers, Brown, and the defense witnesses varied significantly concerning what happened following the decision to arrest Brown and how Brown's arrest occurred. Although the State initially charged Brown with numerous offenses arising out of this arrest, the State proceeded to trial on only the charges of opposing an officer with violence and attempted unlawful taking of a firearm from a law enforcement officer. The jury returned a guilty verdict on the opposing charge and a not guilty verdict on the unlawful taking charge.
While the State correctly points out that Brown's attorney failed to object to the numerous improper comments made by the prosecutor in closing argument, we must look at the entire trial record and adhere to the established law that "when the prosecutorial argument taken as a whole is of such a character that neither rebuke nor retraction may entirely destroy their sinister influence ... a new trial should be granted, regardless of the lack of objection or exception." DeFreitas v. State, 701 So.2d 593, 596 (Fla. 4th DCA 1997) (quoting Ryan v. State, 457 So.2d 1084, 1091 (Fla. 4th DCA 1984)). See also Caraballo v. State, 762 So.2d 542, 547 (Fla. 5th DCA 2000) (holding that fundamental error occurs in closing when the "prejudicial conduct in its collective import is so extensive that its influence pervades the trial, gravely impairing a calm and dispassionate consideration of the evidence and the merits by the jury").
The prosecutor's closing argument in this case reached the level that requires reversal. During closing arguments, the prosecutor made a number of improper arguments, including improper vouching for the credibility of police officers,[2] improper *231 attacks on individual witnesses,[3] commenting on and arguing facts not in evidence,[4] improper personalizing of the prosecutor,[5] blatant appeals to the jurors' emotions, improper attacks on defense counsel, improper golden rule arguments, and an improper attack on witnesses and the defendant by arguing that anyone convicted of a felony is a liar.[6] All of these improper arguments made a mockery of the "neutral arena" in which a trial should be held. Ruiz v. State, 743 So.2d 1, 4 (Fla.1999) ("A criminal trial is a neutral arena wherein both sides place evidence for the jury's consideration; the role of counsel in closing argument is to assist the jury in analyzing the evidence, not to obscure the jury's view with personal opinion, emotion, and nonrecord evidence.").
The argument in this case is of such a character that we are compelled to reverse. While no one comment in isolation would have been enough to warrant a new trial, all of the comments together constitute a closing argument sufficiently improper so as to warrant a new trial.
Reversed and remanded.
DAVIS, J., and DANAHY, PAUL W., (Senior) Judge, Concur.
NOTES
[1] No longer a prosecutor, this attorney currently serves as an elected member of the Board of County Commissioners for Hillsborough County.
[2] At the start of her rebuttal closing, the prosecutor began by stating:

[I]t's unfortunate these officers can't do their job without their integrity being attacked. It's unfortunate that they put their lives on the line. They have to wear firearms to work. They choose to do this and God bless them, because I wouldn't do it. And yet, they come in here and they get attacked. They are in essence being accused of lying. That's what she's saying. Of covering up, getting together and getting their story straight. You know what? She said I will probably make a big deal out of these defense witnesses who are felons. And you know what? I am. 21 felonies do not make a truth. 21 felonies are how many just three of their witnesses had. Just three of their five witnesses together give you 21 convictions for 21 felonies. Let me ask you something. Who's got more motive to lie?
(Emphasis added.)
[3] The prosecutor first used derogatory language to describe Mr. Collaso, a defense witness, by stating that because he had two beers on the night of the offense that he was a "drinker," inferring that he was drunk. Further, the prosecutor described Mr. Hutchins, a defense witness with prior felony convictions, as a liar and a robber. The prosecutor argued:

Who has a motive to lie? Who has a motive to tell you something that's not true? Think about it. Mr. Hutchins 14 times convicted felon. He looked like he was going to walk out of here and go rob somebody. He probably came here between robberies. He looked like he was a convicted felon. He acted like one.
[4] For example, at one point the prosecutor argued:

[T]he Latin gentleman, Mr. Collaso. A drinker. A man who does not like me. Quite obviously because what of [sic] I do for a living. Did you see how he reacted to me when I misunderstood one thing he said? I still don't think I misunderstood him, but I wasn't going to fight with him. Does that look like a man who likes law enforcement? I'm law enforcement. An officer of the court. A prosecutor. I'm law enforcement. I could arrest somebody if I wanted to. Does that look like somebody who likes law enforcement?
[5] For example, the prosecutor argued:

What do we have? Mr. Collaso, a drinker. This happened on March 8th. I turned 29 on March 7th. It was a Sunday. I couldn't go out and party because it was a Sunday. March 8th would have been Monday. He's drinking at midnight, Sunday night into Monday. He admits to drinking every single night.
This is just one example of many throughout the argument.
[6] The prosecutor argued in regard to all of the defense witnesses: "[W]hy didn't any of these witnesses file written complaints? Because they are all making it up. They don't like cops. They are convicted felons who don't like the cops."